## FRANC–STROHMENGER & COWAN, Inc., v. FLEX THRED CORPORATION et al.

District Court, S. D. New York.
March 20, 1931.

Duell, Dunn & Anderson, of New York City (Charles Neave, C. E. Dunn, and J. E. Daniels, all of New York City, of counsel), for plaintiff.

Dean, Fairbank, Hirsch & Foster, of New York City (G. A. Ferris, M. Hirsch, F. J. Foster, and A. Gruber, all of New York City, of counsel), for defendants.

FRANK J. COLEMAN, District Judge.

The patent in suit applies to neckties, and covers a means of safeguarding their resiliency in ordinary use. The usual four-in-hand necktie consists of a piece of silk properly cut, folded, and sewed, and containing within it a lining which gives it support and body. Since the silk is customarily cut on the bias, the fabric stretches longitudinally of the tie under the pulls and strains of adjustment to the person. If the stretching is not excessive, the fabric will resume its normal condition after the strain is released; but, if the stretching has been too great, the fabric will be to some extent permanently distorted, and will present a stringy appearance.

The problem of preventing the silk from stretching too far longitudinally in ordinary use was first solved by the trade by making the lining nonstretchable and sewing the silk to it. The fabric of the lining was cut straight, and not on the bias, and was therefore inelastic both longitudinally and laterally. Since the silk was sewed to it, the entire tie was rigid, and presented disadvantages in adjustment and in durability.

A more satisfactory solution was found in the Langsdorf patent, No. 1,447,090, issued in 1923, in which it was provided that the fabric of the lining be cut on the bias so as to give it some elasticity both longitudinally and laterally, but rigid enough to give substantial support to the silk. The result of these provisions is that the tie, including both the silk and the lining, is stretchable, but the support given by the lining prevents the silk from being stretched in ordinary use to the point where its resiliency is lost. The Langsdorf idea has proved highly successful, and has been generally adopted by the trade.

█ The patent in suit, issued to Leoni in 1927, solves the same problem as the Langsdorf patent, of providing stretchability to the tie but curtailing it so that the silk cannot in ordinary use be extended to the point of permanent distortion; and the means disclosed is a lining so elastic as to give in itself insufficient support to the silk to prevent its being stretched excessively, but combined with an inelastic tape in which there is some slack so that, when under the strain of adjustment the lining has been stretched to the extent of the slack in the tape, it can stretch no farther, and consequently gives the needed support to the silk. The Leoni patent has not proved very successful commercially, and at the present time no ties are manufactured under it.

The defendants, who are manufacturers of ties, use a knitted woolen lining which is elastic in all directions and is in itself more easily stretchable than the silk. Instead of sewing the edges of the silk along the back of the tie with ordinary thread, a knitted elastic thread is used, which not only sews the edges of the silk together, but sews them to the lining, and is securely anchored to both at its ends. The principal questions presented are whether this knitted thread performs the function of the tape specified in the Leoni patent, and, if so, whether the device comes within the purview of the patent.

The claims relied on read as follows:

"1. A necktie including a body material, a strip of uncreasable elastic material stretchable in all directions and means allowing for and limiting the stretch of the same in the direction of the length of the tie.

"2. A necktie lining including a strip of uncreasable elastic material stretchable in all directions, and means allowing for and limiting to a predetermined degree, the stretch of said strip of material in the direction of the length of the tie."

The principal question presented is whether the knitted thread of defendant's product is "a means allowing for and limiting the stretch" of the lining.

The claims are not entitled to a broad construction, not only because of the previous crowded condition of the art, but also because of the very slight commercial effect the invention has had. The specification mentions sheet rubber as the preferred material for the lining, and provides that a "nonelastic strip of material or tape," longer than the sheet rubber, be fastened to it at both ends so that as the tie is pulled the rubber will stretch only to the length of the tape. It is plain that the inventor had in mind, as his "means allowing for and limiting the stretch" of the lining, a nonstretchable member or tape which would offer no resistance to the stretch of the lining until the slack in the tape was exhausted, and would then rigidly stop further stretch. The expression "limiting the stretch" should, I believe, be given this meaning, rather than that of retarding the stretch; and this is made clearer in the second claim, where the expression is, "limiting to a predetermined degree."

If this construction of the claims is correct, defendant's product certainly does not infringe, because the elastic knitted thread could under no circumstances rigidly stop the stretch of the lining. The most it could do would be to add its support to both the lining and the silk, so that there would be three elastic members to sustain the pulls of adjustment. It should be noted, also, that the patent's tape acts only on the lining, while defendants' knitted thread acts as much on the silk as on the lining.

But even if a broader construction of the claims be adopted so as to bar the knitted thread, if it merely adds its support to retard the stretch of the entire tie, still there was no infringement, because I am convinced the preponderance of the evidence requires a finding that the thread does not accomplish that result. In the first place, I believe that Plaintiff's Exhibits 3 and 4, which were the ties relied on as instances of infringement, were essentially similar to the general run of defendants' product, and were made in the same way. Their linings were more stretchable than those now used by defendants, but this difference is of no significance. Furthermore, I believe the tests of defendants' witness Macia were more reliable than those of plaintiff's witness Dyer.

The knitted thread cannot substantially diminish the stretch of the tie because of

three facts: (1) It is so much longer than the distance between the points at which it is anchored in the tie that there must be considerable slack in it when the tie is finished; (2) it is materially more stretchable than the silk, so that the limit of stretch would be reached by the silk before the knitted thread could give substantial support even if there were no slack in it; and (3) it is so easily broken that, if its limit of stretch were reached, it would be unsafe to have it take up much of the strain. I believe the testimony of defendants' witness as to how their ties are made. The knitted thread is used merely to hold the edges of the silk and the lining together, and the purpose of its stretchability is to obviate the necessity of having an unsightly degree of slack in it to allow for the stretch of the tie. The thread is loosely sewed through both the silk and the lining without any exact measurement or positioning of it, and the slack which it is given is concealed in the looseness of the stitches. Notwithstanding Mr. Dyer's testimony, I believe it very improbable that the knitted thread takes up any appreciable part of the strain in ordinary use.

Since I believe that there was no infringement, it is unnecessary to consider the other defenses. I accordingly direct a decree for the defendants.